FILED

2015 JUN 17  AM 9: 14

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N F O R M A T I O N |
| | ) | |
| Plaintiff, | ) | |
| | ) | **1 15 CR 215** |
| v. | ) | CASE NO. |
| | ) | Title 18, Sections 1347, |
| SHARON R. WARD, | ) | 1028A(a)(1), and 2, United |
| | ) | States Code |
| Defendant. | ) | **JUDGE LIOI** |

The United States Attorney charges:

### GENERAL ALLEGATIONS

1.      SHARON R. WARD ("Defendant WARD") was the owner and Director of

Nursing at Heritage Home Healthcare Agency of Cleveland Heights, Inc. ("Heritage Home

Health").

2.      Heritage Home Health was located at 2490 Lee Boulevard, #314, Cleveland

Heights, Ohio 44118, in the Northern District of Ohio.

3.      Defendant WARD filed Heritage Home Health's Domestic Articles of

Incorporation for a For-Profit Corporation with the Ohio Secretary of State on or about

December 30, 2002, and appointed herself as a statutory agent of Heritage Home Health.

4.      On or about April 20, 2005, and as set forth below in more detail, Defendant

WARD was excluded from participation in any federal health care program.

5.     On or about September 1, 2005, and as set forth below in more detail, Defendant

WARD's nursing license from the state of Ohio lapsed and was not reinstated during the relevant

time periods.

6.     Between 2006 and 2014, Defendant WARD continued to own Heritage Home

Health, continued to hold herself out as a licensed nurse, fraudulently used the name and nursing

license number of a registered nurse with a similar name, visited patients and conducted

supervisory nursing visits as Heritage's Director of Nursing, caused billings to Medicaid that

resulted in Heritage Home Health receiving approximately $18,149,122.44, and was paid a total

salary of approximately $2,276,423.74, all during Defendant WARD's period of exclusion from

federal health care programs.

The Medicaid Program

7.     Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq., established the

Grants to States for Medical Assistance Programs ("Medicaid") which was designed to provide

medical services, equipment, and supplies to certain individuals and families with low income.

Medicaid was a federal and state funded health insurance program administered by the various

states. The United States Department of Health and Human Services ("HHS") funds

approximately 60 percent of Ohio's Medicaid program. The state of Ohio initially administered

its Medicaid program through the Ohio Department of Jobs and Family Services ("ODJFS"), and

then through the Ohio Department of Medicaid ("ODM").

8.     Medicaid was a health care benefit program as defined under Title 18, Section

24(b), United States Code.

9.     In order to be reimbursed by Medicaid for certain home health services, a

provider Home Health Agency ("HHA") rendering a service to Medicaid recipients was first

required to enter into a provider agreement with ODJFS/ODM in which the provider agreed to comply with all applicable state and federal statutes, regulations and guidelines.

10.     Home health services may be provided by an HHA which includes, under the Ohio Medicaid program, home health nursing, home health aide, and skilled therapies such as physical and occupational therapy. Home health services must be performed within the nurse's or home health aide's scope of practice, must be provided and documented in accordance with the consumer's plan of care, must be provided in a face-to-face encounter, must be medically necessary, and must be provided in accordance with federal and state laws rules and regulations.

11.     Providers of such services were required to create and maintain documents supporting the claims they submitted, including patient medical records, assessment and treatment records, timesheets, nursing notes, including the Home Health Certification and the CMS Form 485, also known as the Plan of Care for each consumer.

The PASSPORT Program

12.     The Pre-Admission Screening System Providing Options and Resources Today program ("PASSPORT") offered home health care and community-based services to individuals as an alternative to institutionalization or nursing home care. PASSPORT was funded with state and federal funds under the Medicaid Waiver program. PASSPORT contracted with Medicaid home care agencies to provide services to eligible individuals.

13.     The Ohio Department of Aging ("ODA") administered the PASSPORT program. Reimbursement for PASSPORT services required the provider to have a Medicaid number that had a waiver designation code. ODM assigned the PASSPORT waiver designation code to an existing provider Medicaid number, or assigned a new number to the provider to be used exclusively for reimbursement of waiver services.

14.     In order to provide home care services to eligible Medicaid recipients under the PASSPORT program, the provider home health agency agreed to abide by all applicable federal and state regulations, including, but not limited to, ensuring all employees had the proper training and certification, passed criminal background checks, and were not federally excluded from participation in health care programs.

15.     In order to be reimbursed for services provided under the PASSPORT program, the provider home health agency was required to have a supervisor "conduct and document a visit to the consumer at least once every sixty-two days to evaluate compliance with the activity plan, consumer satisfaction, and [personal care aide] performance...." O.A.C. § 173-39-02.11(C)(3)(b).

16.     O.A.C. § 173-39-02.11(C)(2)(e) required that such supervisor be "only a RN or LPN under the direction of a RN." Supervisory visits were not directly reimbursed by ODA or ODM. If these visits were not properly conducted, ODA/ODM denied payment to the provider for any personal care services provided after the missed visit.

<u>Federal Health Care Exclusion</u>

17.     Pursuant to authority under Title 42, United States Code, Section 1320A-7, the United States Department of Health and Human Services Office of Inspector General ("HHS-OIG") excluded the following individuals from participation in any federal health care program: "(a)(1) Any individual or entity that has been convicted, under federal or state law, of a criminal offense relating to the delivery of an item or service under title XVIII or under any State health care program."

18.     Pursuant to 42 U.S.C. § 1395y, "no payment [could] be made ... with respect to any item or service ... furnished by an individual or entity during the period when he [was] excluded pursuant to [42 U.S.C. § 1320a-7]." 42 U.S.C. § 1395y(e)(1)(A).

Sharon R. Ward's Exclusion

19.     On or about April 16, 2004, Defendant WARD entered a plea of No Contest to one count of Medicaid Fraud, a misdemeanor of the first degree, in Franklin County Municipal Court, for Defendant WARD's continuing course of conduct in making or causing to be made, false or misleading statements or representations to ODJFS for use in obtaining reimbursement from Medicaid.

20.     On or about March 31, 2005, as a result of her criminal conviction of an offense related to the delivery of services under the Medicaid program, the HHS-OIG notified Defendant WARD that she was being excluded from participation in any capacity in Medicare, Medicaid, and all Federal health care programs for a minimum period of five years.

21.     The exclusion became effective 20 days later on or about April 20, 2005. Defendant WARD did not grieve or appeal the exclusion action.

22.     Federal exclusion limited the ability of an excluded provider to work in any capacity in the health care field in the United States. Excluded providers were prohibited from submitting or causing claims to be submitted to federal health care programs for items or services which she provided and also from being employed to provide items or services which were billed to a federal health care program. Reinstatement to participate in federal health care programs was not automatic. Excluded providers were required to apply to the HHS-OIG and be granted reinstatement by the HHS-OIG before they could resume providing, and billing for services to recipients of federal health care benefit programs.

23. Defendant continued to own Heritage Home Health at all times relevant to this Information while she was excluded.

24. Defendant WARD also saw patients as a nurse, conducted supervisory nursing visits, and billed Medicaid for her services and her employees at Heritage Home Health while she was excluded.

25. Defendant WARD caused billings to Medicaid that resulted in Heritage Home Health receiving approximately $18,149,122.44 while she was excluded.

26. Defendant WARD personally received approximately $2,276,423.74 in salary from Heritage Home Health while she was excluded.

## Defendant Sharon R. Ward Used Another Registered Nurse's Name and License Number

27. On or about February 13, 1995, Defendant WARD received a registered nursing license from the state of Ohio. The Ohio Board of Nursing assigned Defendant WARD nursing license number RNXXX225.

28. Another registered nurse in the state of Ohio ("Nurse 2") had a similar name to Defendant Ward. The Ohio Board of Nursing assigned Nurse 2 a different, unique nursing license number.

29. From on or about September 1, 2005, after being excluded, until her reinstatement by the Ohio Board of Nursing on or about October 22, 2014, Defendant WARD did not have a valid nursing license and was not legally permitted to practice nursing in the state of Ohio.

30. Defendant WARD fraudulently used Nurse 2's name and nursing license number in order to deceive the PASSPORT officials who conducted annual reviews of Heritage Home Health.

31.  On or about August 4, 2011, Defendant WARD altered an Ohio nursing license verification document for Nurse 2 to make it appear as if Defendant WARD had a valid, active nursing license, when she knew that her nursing license was inactive.

32.  Defendant WARD also used Nurse 2's name and nursing license number in patient files and on documents in her personnel file.

33.  Nurse 2 never worked for Heritage Home Health and never gave Defendant WARD permission to use her name or nursing license number.

## COUNT 1
### Health Care Fraud
### (18 U.S.C. § 1347 and § 2)

The United States Attorney further charges:

34.  The United States Attorney realleges and incorporates by reference the allegations set forth in paragraphs 1 through 33 of the Information as if fully set forth herein.

35.  From on or about April 20, 2005, through on or about February 28, 2015, the exact dates unknown, in the Northern District of Ohio, the defendant, Sharon R. Ward, knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud Medicaid and PASSPORT, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises described herein, money and property owned by and under the custody and control of, a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services.

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 2
### Aggravated Identity Theft
### (18 U.S.C. § 1028A(a)(1))

The United States Attorney further charges:

36.     The United States Attorney realleges and incorporates by reference the allegations set forth in paragraphs 1 through 16 and paragraphs 27-33 of the Information as if fully set forth herein.

37.     From on or about April 20, 2005, through on or about February 28, 2015, the exact dates unknown, in the Northern District of Ohio, the defendant, Sharon R. Ward, did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit 18 U.S.C. 1347, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

### FORFEITURE

The United States Attorney further charges:

### FORFEITURE UNDER 18 U.S.C. § 982(a)(7) – COUNT 1

38.     The allegations of Count 1 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7).  As a result of the foregoing offense, Defendant WARD shall forfeit to the United States all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense; including, but not limited to, the following:

a.)     $14,879.49 seized from Ohio Savings Bank Account Number xxxxx9602, in the name of Defendant.

8

b.) $86,113.04 seized from Key Bank Account Number xxxxxxxx3827, in the name of Heritage Home Healthcare.  Defendant is a signature card holder to Key Bank Account Number xxxxxxxx3827.

c.) $168,197.40 seized from Ohio Savings Bank Account Number xxxx2100, in the name of Defendant.

d.) 3808 Colony Road, South Euclid, Cuyahoga County, Ohio, Permanent Parcel No.: 704-23-100.  The record owner of the property is Defendant.  The legal description of the property is as follows: Situated in the City of South Euclid, County of Cuyahoga and State of Ohio: And known as being the Westerly 46.00 feet of Sublot No. 259 and the Easterly 3.00 feet of Sublot No. 258 in The Eastway-Colony Estates Subdivision of part of Original Euclid Township Lot No. 24, Tract 2, as shown by the recorded plat in Volume 140 of Maps, Page 15 of Cuyahoga County Records and together forming a parcel of land 49 feet front on the Southerly side of Colony Road and extending back about 113.06 feet on the Westerly line, about 113.20 feet on the Easterly line and having a rear line of 49 feet, as appears by said plat, be the same more or less, but subject to all legal highways.

## SUBSTITUTE PROPERTY

39.    In the event that any property subject to forfeiture under 18 U.S.C. § 982(a)(7), as a result of any act or omission of the defendant:

a.) cannot be located upon exercise of due diligence;

b.) has been transferred or sold to, or deposited with a third party;

c.) has been placed beyond the jurisdiction of this Court;

d.)     has been substantially diminished in value; or,

e.)     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of the defendant, up to an amount equivalent to the value of the forfeitable property described above.

STEVEN M. DETTELBACH
United States Attorney


By:  *Ann C. Rowland*

ANN ROWLAND
Deputy Chief, Criminal Division